Serafim KARALEXIS et al., Plaintiffs,

v.

Garrett H. BYRNE, as he is the duly elected District Attorney for Suffolk County, City of Boston, Commonwealth of Massachusetts, Defendant.

Civ. A. No. 69–665–J.

United States District Court
D. Massachusetts.

Nov. 28, 1969.

Stay Granted Dec. 15, 1969.
See 90 S.Ct. 469.

Herbert Swartz, Mack Roberts, Brookline, Mass., for plaintiffs.

Robert H. Quinn, Atty. Gen., Theodore Glynn, Jr., Ruth Abrams, Lawrence P. Cohen, Asst. Attys. Gen., Louis M. Nordlinger, Boston, Mass., for defendant.

Alan M. Dershowitz, Cambridge, Mass., for intervenor, Grove Press Inc.

Before ALDRICH, Circuit Judge, and JULIAN and PETTINE, District Judges.

ALDRICH, Circuit Judge.

This is a three-judge district court action in which a frontal attack is made upon a state obscenity statute, based upon the Court's recent decision in Stanley v. Georgia, 1969, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542. In that case the Court reversed a state conviction for possession of a concededly obscene moving picture film, found in the home of the defendant. We are asked to rule that this decision extends to a case where the possessors permitted a number of consenting adults or, more exactly, paying adult members of the public, to view their possibly obscene picture in a moving picture house.

Briefly, the facts are these. Plaintiffs Karalexis et al. are the owners and operators of a moving picture theatre which has been engaged in showing a film, owned and leased by Grove Press, Inc.,[1] entitled "I Am Curious (Yellow)." The named defendant is the county district attorney who has charged plaintiffs

1. Grove Press, Inc.'s motion to intervene was originally denied, counsel being permitted, instead, to appear as an amicus. In view of this opinion, Grove Press may be allowed to renew its motion at an early date.

with violation of Mass.G.L. c. 272 § 28A [2] as a result of their exhibiting the film, but notice has been given, 28 U.S.C. § 2284, and an assistant attorney general has conducted the defense throughout. Plaintiffs seek a declaration that the statute is unconstitutional and an injunction against prosecution thereunder. Because of the fact that the original indictments were defective, the proceedings sought to be enjoined postdate the assumption of jurisdiction by this court, and no question arises under 28 U.S.C. § 2283, the anti-injunction, or what is sometimes called the comity, statute.

Defendant's broad motion to dismiss tests the substance of plaintiffs' case. Our present question, however, is only whether we shall issue a temporary injunction pending final disposition, there being possible reasons to withhold the making of a final decision, which we have not yet fully explored. Alternatively, there is the question whether we should abstain altogether, without granting temporary relief. With respect to the first question the issues, of course, are whether there is a probability that plaintiffs will ultimately prevail, Automatic Radio Mfg. Co. v. Ford Motor Co., 1 Cir., 1968, 390 F.2d 113, cert. denied 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653, and the adequacy of the remedy at law.

The following facts appear by stipulation of counsel or otherwise. Plaintiffs have sufficiently indicated to the viewing public the possible offensiveness of the film, so that no patron will be taken unawares and his sensibilities offended. On the other hand, the film is not advertised in any pandering manner within the stricture of Ginsburg v. United States, 1966, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31. Finally, it is conceded that the theatre is policed, so that no minors are permitted to enter.

For purposes of this case we assume that the film is obscene by standards currently applied by the Massachusetts courts.[3] In this connection we note that the Superior Court of Massachusetts, in the recent case of Commonwealth v. Karalexis, has found that "the dominant theme of the film * * * is its appeal to prurient interest in sex * * *. [The film] is patently offensive to the average person and an affront to community standards * * * [It] is utterly without redeeming social value." Except insofar as it found statements in the opinion favorable to its conclusions in other respects the Superior Court disposed of Stanley v. Georgia by stating it to be "irrelevant."

In *Stanley* Mr. Justice Marshall wrote the opinion of the Court in which four others joined. Mr. Justice Black concurred in the result because, in his mind, no case-by-case reasoning is needed in the area of obscenity; all is permissible.[4] The remaining three justices concurred

2. "§ 28A. Importing, printing, distributing or possessing obscene things

    Whoever imports, prints, publishes, sells or distributes a pamphlet, ballad, printed paper, phonographic record, or other thing which is obscene, indecent or impure, or an obscene, indecent or impure print, picture, figure, image or description, or buys, procures, receives or has in his possession any such pamphlet, ballad, printed paper, phonographic record, obscene, indecent or impure print, picture, figure, image or other thing, for the purpose of sale, exhibition, loan or circulation, shall be punished * * *."

3. Another court, viewing this same film, has differed. United States v. A Motion Picture Film Entitled "I Am Curious—Yellow," 2 Cir., 1968, 404 F.2d 196.

4. The Superior Court's extensive analysis in *Karalexis* of a decade of the Supreme Court's views, reaching the conclusion that there is no majority agreement on any one approach to obscenity, apart from the fact that it disregards such an agreement in *Stanley*, overlooks the fact that if only four, or even three, justices agree on one method by which immunity is reached, this agreement is as significant as if five joined, so long as there are enough other justices who can be counted on to concur in the result. If we may be pardoned the analogy, if deuces are wild, an inside straight flush and a deuce takes the pot. See Redrup v. New York, 1967, 386 U.S. 767, 770–771, 87 S.Ct. 1414, 18 L.Ed.2d 515.

on Fourth Amendment grounds,[5] stating that the obscenity question should not have been reached. The Court held that in certain circumstances possession of a moving picture film is constitutionally protected even though by contemporary standards the film is obscene. We do not consider this irrelevant.

The question is, how far does *Stanley* go. Is the decision to be limited to the precise problem of "mere private possession of obscene material," 394 U.S. at 561, 89 S.Ct. at 1245; is it the high water mark of a past flood, or is it the precursor of a new one? Defendant points to the fact that the Court in *Stanley* stated that Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, was "not impaired by today's holding," and in the course of its opinion recognized the state's interest there upheld in prohibiting public distribution of obscenity. Yet, with due respect, *Roth* cannot remain intact, for the Court there had announced that "obscenity is not within the area of constitutionally protected speech or press," 354 U.S. at 485, 77 S.Ct. at 1309,[6] whereas it held that Stanley's interest was protected by the First Amendment, and that the fact that the film was "devoid of any ideological content" was irrelevant. 394 U.S. at 566, 89 S.Ct. at 1248.

Of greater importance, a need for affirmative proof that obscenity raises a "clear and present danger of antisocial conduct or will probably induce its recipients to such conduct," rejected in *Roth*, was stated in *Stanley* to have been rejected in the area of "public distribution." The obverse is apparent. Of necessity the *Stanley* court held that obscenity presented no clear and present danger to the adult viewer, or to the public as a result of his exposure. Obscenity may be offensive; it is not per se harmful.[7] 394 U.S. at 567, 89 S.Ct. 1243. Had the Court considered obscenity harmful as such, the fact that the defendant possessed it privately in his home would have been of no consequence.

In recognizing that public distribution differed from private consumption, the Court in *Stanley* gave two examples. In the case of public distribution, "obscene material might fall into the hands of children * * * or * * * it might intrude upon the sensibilities or privacy of the general public." 394 U.S. at 567, 89 S.Ct. at 1249. To these examples, which were the extent of the Court's discussion, it can be said, equally with *Stanley*, "No such dangers are present in this case."

We confess that no oracle speaks to Karalexis unambiguously. Nonetheless, we think it probable that *Roth* remains intact only with respect to public distribution in the full sense, and that restricted distribution, adequately controlled, is no longer to be condemned. It is difficult to think that if Stanley has a constitutional right to view obscene films, the Court would intend its exercise to be only at the expense of a criminal act on behalf of the only logical source, the professional supplier.[8] A constitu-

---

5. Not the Fourth Amendment grounds on which the defendants assert the majority opinion rests. The three concurring justices regarded the warrant under which Stanley's home had been searched insufficient to justify the seizure of the film. The opinion of the Court, pointedly, it may be thought, ignored that issue. The present defendant's claim that, nevertheless, the Court looked to a Fourth Amendment general protection of privacy, is made in the face of the fact that the Court spoke constantly in terms of the First and Fourteenth Amendments and did not mention the Fourth.

6. "[I]mplicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance." 354 U.S. at 484, 77 S.Ct. at 1309.

7. Non constat that a film which went beyond ordinary obscenity by exhorting sexual misconduct might be prohibited. Exhortation is not suggested in the case at bar.

8. It may be suggested that the supplier would run a particular risk, since the apprehended possessor of the film would, under *Stanley*, have no Fifth Amendment privilege to resist inquiry.

# 1367

tional right to receive a communication would seem meaningless if there were no coextensive right to make it. *Cf.* Griswold v. Connecticut, 1965, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510. If a rich Stanley can view a film, or read a book, in his home, a poorer Stanley should be free to visit a protected theatre or library. We see no reason for saying he must go alone.[9]

So much for the probability of success. We do not agree with defendant's contention that there is no indication of irreparable injury. Even if money damages could be thought in some cases adequate compensation for delay, this defendant will presumably be immune. We agree with plaintiffs that the box office receipts, if there is a substantial delay, can be expected to be smaller. A moving picture may well be a diminishing asset.[10] It has been said, also, that in assessing injury the chilling effect upon the freedom of expression of others is to be considered. *See* Dombrowski v. Pfister, 1965, 380 U.S. 479, 486–489, 85 S.Ct. 1116, 14 L.Ed.2d 22.

■ This leads us to defendant's contention that we should, nevertheless, abstain until the Massachusetts Supreme Judicial Court has considered this question, since plaintiffs can raise it in their appeal from their Superior Court convictions. However, if our interpretation of *Stanley* is correct, we find it difficult to think the Massachusetts statute susceptible to a construction which would save it from overbreadth. Hence we must regard abstention as improper. Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444. In the field where Congress has established a three-judge district court, abstention may still be warranted if there is a reasonable likelihood that the state court may construe its statute so as to avoid constitutional issues, but abstention is not appropriate simply to allow the state court to be the one to decide the statute's basic conflict with the federal constitution.[11]

We do understand, however, certain apprehensions voiced by the defendant. We note, accordingly, that this is a decision of probability, not a final holding that the Massachusetts statute is unconstitutional. Much less is it a decision that one who distributes to children, or who creates a clear public nuisance, has standing to raise the contention that the statute is overbroad.[12] The preliminary

9. For a further discussion of Stanley v. Georgia, *see* The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7, 147–154 (1969).

10. The fact that plaintiffs are economically motivated is of no significance. New York Times Co. v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. In Interstate Circuit, Inc. v. Dallas, 1968, 390 U.S. 676 at 684, 88 S.Ct. 1298 at 1303, 20 L.Ed.2d 225, the Court spoke disapprovingly of the effect of the Dallas ordinance upon "one who wishes to convey his ideas through that medium [films], which of course includes one who is interested not so much in expression as in making money * * *."

11. There is an alternative possibility, that the Supreme Judicial Court would find the film not obscene. The Superior Court, in an elaborate opinion, has found otherwise. We are not moved by the thought that we should postpone permitting plaintiffs to exhibit their film on the ground that, after all, it is *not* obscene.

12. Normally standing is granted only when a defendant's own conduct is constitutionally protected. United States v. Raines, 1960, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524. This rule has been relaxed in cases dealing with statutes affecting free expression. *See* United States v. Raines, *supra*, at 22, 80 S.Ct. 519 (dictum); Thornhill v. Alabama, 1940, 310 U.S. 88, 96–98, 60 S.Ct. 736, 84 L.Ed. 1093; Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L.J. 599 (1962). However, even where free speech is involved, it may be that standing should not be granted unless the defendant's conduct is at least *arguably* constitutionally privileged. *Cf.* Brown v. Louisiana, 1966, 383 U.S. 131, 143, 147–148, 86 S.Ct. 719, 15 L.Ed.2d 637 (concurring opinion of Mr. Justice Brennan); Dennis v. United States, 341 U.S. 494, 515–517, 71 S.Ct. 857, 95 L.Ed. 1137. We do not reach such questions.

# 1368

injunction presently to issue will be restricted to, and conditioned upon, plaintiffs' adherence to the restrictions described earlier in this opinion. Nor do we consider the difference between the right to regulate conduct as distinguished from expression. *Cf.* City of Portland v. Derrington, Or. 2/26/69, 451 P.2d 111, cert. denied Derrington v. City of Portland, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177. Finally, we voice no opinion as to the legal consequences if plaintiffs exhibit their film under the protection of our injunction, and it is ultimately determined that our view was mistaken and that such exhibition was properly considered illicit.

Because of the importance of the matter, the injunction will not issue for one week, to permit plaintiffs to add other parties, if so advised, and to give the defendant the opportunity to apply to the Circuit Justice for a stay.

JULIAN, District Judge (dissenting).

I do not agree with the majority. The constitutionality of the Massachusetts criminal obscenity statute[1] is presently being litigated in the Massachusetts Courts. Pending final adjudication by the Supreme Judicial Court of the plaintiffs' appeal from their conviction in the Superior Court for violating that statute, this Court should abstain from taking further action in this case and should not interfere with the enforcement of the statute by the Commonwealth by enjoining its public officials from prosecuting the plaintiffs for additional violations of the statute should they persist in exhibiting the film while their conviction still stands.

It is my understanding that for the purpose of deciding the questions presently before us the Court assumes that the film involved in this litigation is in fact obscene within the meaning of the law. In fact, no evidence has been taken and no finding made on this issue by this Court. The Superior Court has found the film to be obscene.

The plaintiffs' reliance on Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), is untenable. The case before us is governed by Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The precise issue in *Roth* was the constitutionality under the First Amendment of two criminal obscenity statutes. One was a Federal statute (18 U.S.C. § 1461) which made it a crime for anyone to deposit for mailing and delivery obscene books, circulars or advertising. The other was a California statute (West's Cal. Penal Code Ann., 1955, § 311) which made it a crime for any person willfully and lewdly to keep for sale an obscene book or to publish an obscene advertisement of them. The Supreme Court held both statutes constitutional.

The Massachusetts statute before us is essentially the same as the two statutes upheld in *Roth* in that all three make the public distribution of obscene matter a criminal offense. This being so, it must follow as a matter of elementary logic that the Massachusetts statute is also constitutional.

The holding in *Roth* is still the law and is binding upon this Court. It has not been overruled by *Stanley* or any other case.

In *Stanley* the appellant was indicted, tried and convicted for "knowingly hav[ing] possession of * * * obscene matter" in violation of a Georgia statute. The Georgia Supreme Court, 224 Ga. 259, 161 S.E.2d 309, affirmed, holding it "not essential to an indictment charging one with possession of obscene matter that it be alleged that such possession was with

---

1. Mass.G.L. c. 272, § 28A provides as follows:
    "Whoever * * * has in his possession * * * any obscene * * * print, picture, figure, image * * * for the purpose of * * * exhibition * * * shall be punished * * *."

The Massachusetts Court has construed this statute implicitly to require proof that the defendant *knowingly* has such material in his possession. Demetropolos v. Commonwealth, 1961, 342 Mass. 658, 175 N.E.2d 259.

'intent to sell, expose or circulate the same.'" Appellant contended that the Georgia obscenity statute was unconstitutional insofar as it punishes mere private possession of obscene matter. The United States Supreme Court agreed and held that "the mere private possession of obscene matter cannot constitutionally be made a crime." The Supreme Court takes pains to distinguish the case before it from *Roth* and similar cases in which *public commercial dissemination* of obscene material is involved.

The Court notes (394 U.S. p. 559, 89 S.Ct. p. 1245) that the Georgia statute extended "further than the typical statute forbidding commercial sales of obscene material." It also notes (p. 559, 89 S.Ct. p. 1245) that the "State and appellant both agree that the question here before us is whether 'a statute imposing criminal sanctions upon the mere [knowing] possession of obscene matter' is constitutional." The Court points out (pp. 560–561, 89 S.Ct. p. 1246) that neither *Roth* nor any subsequent decision dealt with that question but "dealt with the power of the State and Federal Governments to prohibit or regulate certain *public* actions taken or intended to be taken with respect to obscene matter." (Emphasis supplied.)

And again at p. 567, 89 S.Ct. at p. 1249: "But that case [*Roth*] dealt with public distribution of obscene materials and such distribution is subject to different objections." In note 10 on the same page the Court makes reference to the Model Penal Code § 251.4 (American Law Institute, Proposed Official Draft, 1962) which would also make commercial dissemination of obscene matter a criminal offense. The Court concludes by stating (p. 568, 89 S.Ct. p. 1250):

"We hold that the First and Fourteenth Amendments prohibit making mere private possession of obscene material a crime. *Roth* and the cases following that decision are not impaired

by today's holding. As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home."

Thus the Supreme Court itself has declared in clear, unambiguous language that the holding in *Roth* has not been overruled by the decision in *Stanley* and is still the law.

Accordingly, on the authority of *Roth*, I would reject as wholly unjustified the plaintiffs' contention that the Massachusetts obscenity statute is unconstitutional on its face.

On the question of abstention the pertinent cases are Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22,[2] and Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed. 2d 444.[3] In both those cases the statutes under attack were held to be overbroad and susceptible of sweeping and improper application and therefore justifiably attacked on their face as abridging expression protected by the First Amendment. Additionally, though threatened with prosecution, the petitioner in neither case was then in fact being prosecuted for violating the challenged statute and consequently its constitutionality was not being litigated in the State court. In *Dombrowski* there was the added element of bad faith on the part of the State prosecutor, an element certainly not present here. The Court accordingly held that abstention was not appropriate. Since the Massachusetts statute is not being justifiably attacked on its face as abridging free expression and since the case in the Massachusetts Court has been tried and decided and is now on appeal, it seems to me especially appropriate for this Court to abstain from proceeding to a declaratory adjudication of the constitutionality of the statute until the Supreme Judicial Court shall have heard and decided the

2. The statute under attack was the Louisiana Subversive Activities and Communist Propaganda Control Law.

3. The statute prohibited the distribution of anonymous handbills critical of political candidates.

appeal. The parties anticipate that this will happen within the next three or four months.

No injunction should issue against the defendant district attorney. He should be left free to prosecute these plaintiffs should they resume the exhibition of the film while their conviction in the Superior Court remains outstanding and their appeals pending.

The plaintiffs have failed to show the existence of the requisite grounds that would justify the issuance of a preliminary injunction:

(1) Since the statute is not unconstitutional on its face and the film is assumed by the Court to be obscene,[4] and has been found to be obscene by the Superior Court, the plaintiffs have failed to establish the probability that they will ultimately prevail in this litigation.

(2) There is no evidence before us that plaintiffs will suffer irreparable injury if they are prevented from showing the film until final disposition of their appeal. There has been no showing of the extent of the monetary loss, if any, that they will suffer if they are not allowed to show the film. We should not concern ourselves with the diminution in the value of the film if its showing is delayed for a substantial period of time. The film is not owned by the plaintiffs, but by Grove Press, Inc.,[5] which is not a party to this litigation. Furthermore, there is no evidence of the economic value of the film.

(3) The mere possibility that plaintiffs may be deprived of a constitutional right pending final determination of this case does not amount to the irreparable injury necessary to justify the issuance of the injunction.

Thus, in Dombrowski v. Pfister, 380 U.S. 479, 484–485, 85 S.Ct. 1116, 14 L.Ed.2d 22, the Court states:

"[T]he Court has recognized that federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework. It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings."

What the majority of this Court is doing today is without precedent. It is declaring that the public, commercialized dissemination of obscene matter to adults, regardless of how lewd and degenerate it may be, is protected expression under the First Amendment. I have found no authority for this proposition either in decided cases or in legislative enactments. On the contrary numerous statutes, both Federal and State, and a multitude of cases decided by the Supreme Court of the United States[6] and by other courts, Federal and State, have consistently denounced and punished as criminal the public, commercialized dissemination of obscene matter.

In my opinion the position taken by the majority of this Court is legally unsound and inimical to the public interest. I must therefore dissent.

4. In its Memorandum of July 15, 1969, this Court said: "[T]he Court * * * will not consider now or at any other time the claim that the film is not obscene, as an evidentiary matter."

5. The motion of Grove Press, Inc., to intervene as a party plaintiff was denied by the Court on July 15, 1969.

6. See, for example, the cases listed in *Stanley*, supra, notes 5 and 6, 394 U.S. at page 561, 89 S.Ct. 1243.