**Ira ADLER, an individual t/a District Book Store**

v.

**Donald D. POMERLEAU, as Commissioner, Baltimore City Police Department and The Honorable Charles E. Moylan, Jr., in his capacity as State's Attorney for Baltimore City, Jointly and Severally.**

**Civ. A. No. 21502.**

United States District Court,
D. Maryland.
June 2, 1970.

Robert Eugene Smith and Howard B. Gersh, Baltimore, Md., for plaintiff.

Francis B. Burch, Atty. Gen. of Maryland, Bernard L. Silbert, Asst. Atty. Gen., for defendants.

David Simonson, Asst. State's Atty., for defendant Moylan.

Before SOBELOFF, Circuit Judge, and THOMSEN and NORTHROP, District Judges.

NORTHROP, District Judge.

Plaintiff, the proprietor of an "adult book store" has filed a complaint against the Commissioner of the Baltimore City Police Department and the State's Attorney for Baltimore City, seeking: (1) preliminary and permanent injunctions (a) enjoining defendants from making any arrests or seizures of publications or other material in plaintiff's possession without a prior adversary proceeding on the issue of obscenity, (b) enjoining them from prosecuting certain indictments pending in the Criminal Court of Baltimore against plaintiff and his employees charging violations of the Maryland obscenity laws, based upon material purchased from his store or seized there, and (c) directing the return of the material seized; (2) a declaratory judgment that certain Maryland statutes dealing with obscenity and search and seizure are unconstitutional on their face and as applied; (3) $100,000 damages against defendants jointly and severally; and (4) other and further relief.[1] A three-judge court has been convened, and defendants have filed a motion to abstain, which has been heard by the three judges. At the hearing plaintiff dismissed his claim for damages and defendants offered to take certain action and to refrain from other action, set out and discussed below. The facts appear from the allegations of the complaint, many exhibits and undisputed statements by counsel at the hearing.

The statutes under attack, art. 27, secs. 417, 418 and 551, Md.Code Ann. (1967 Repl.Vol.), are set out in note 2,

---

1. Jurisdiction is claimed and exists under 28 U.S.C.A. §§ 1331, 1343(3), (4), 2201, and 42 U.S.C.A. § 1983.

2. OBSCENE MATTER
§ 417. Definitions.
As used in this subtitle,
(1) *"Matter"* means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statute or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.
(2) *"Person"* means any individual, partnership, firm, association, corporation, or other legal entity, but shall not be construed to include an employee of any individual, partnership, firm, association, corporation, or other legal entity operating a theatre which shows motion pictures if the employee is not an officer thereof or has no financial interest therein other than receiving salary and wages.

(3) *"Distribute"* means to transfer possession of, whether with or without consideration.

(4) *"Knowingly"* means having knowledge of the character and content of the subject matter.

§ 418. Sending or bringing into State for sale or distribution; publishing, etc., within State.

Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this State for sale or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor.

## SEARCH WARRANTS

§ 551. Issuance; contents; time of search, etc.; disposition of property seized.

Whenever it be made to appear to any judge of the Supreme Bench of Baltimore City, or to any judge of any of the circuit courts in the counties of this State, or to any justice of the peace in this State, by a written application signed and sworn to by the applicant, accompanied by an affidavit or affidavits containing facts within the personal knowledge of the affiant or affiants, that there is probable cause, the basis of which shall be set forth in said affidavit or affidavits, to believe that any misdemeanor or felony is being committed by any individual or in any building, apartment, premises, place or thing within the territorial jurisdiction of such judge or justice of the peace, or that any property subject to seizure under the criminal laws of the State is situated or located on the person of any such individual or in or on any such building, apartment, premises, place or thing, then such judge or justice of the peace may forthwith issue a search warrant directed to any duly constituted policeman, constable or police officer authorizing him to search such suspected individual, building, apartment, premises, place or thing, and to seize any property found liable to seizure under the criminal laws of this State, provided that any such search warrant shall name or describe, with reasonable particularity, the individual, building, apartment, premise, place or thing to be searched, the grounds for such search and the name of the applicant on whose written application as aforesaid the warrant was issued, and provided further that any search or seizure under the authority of such search warrant, shall be made within fifteen (15) calendar days from the date of the issuance thereof and after the expiration of said fifteen (15) day period said warrant shall be null and void. If, at any time, on application to a judge of the circuit court of any county or of the Criminal Court of Baltimore City, it appears that the property taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, or that the property was taken under a warrant issued more than fifteen (15) calendar days prior to the seizure, said judge must cause it to be restored to the person from whom it was taken; but if it appears that the property taken is the same as that described in the warrant and that there is probable cause for believing the existence of the grounds on which the warrant was issued, then said judge shall order the same retained in the custody of the person seizing it or to be otherwise disposed of according to law.

Rule 707. Search Warrants.

a. *Inventory.*

An officer taking property under a search warrant shall make a written inventory of the property taken. The inventory shall be signed by the officer executing the search warrant and shall be made in the presence of the person from whom the property was taken if such person is present at the time the search warrant is executed; if such person is not present, the inventory shall be made in the presence of the person apparently in charge of the premises from which the property was taken, if such a person is present.

b. *Service of Copy.*

An officer taking property under a search warrant shall leave a copy of the inventory and a copy of the warrant with the person from whom the property was taken, if such person is present at the time the search warrant is executed. If such person is not present, the officer shall leave a copy of the inventory and a copy of the search warrant with the person apparently in charge of the premises from which the property was taken. If neither of such persons are present at the time the search warrant is executed, the officer shall leave a copy of the inventory and a copy of the search warrant in a conspicuous place at the premises from which the property was taken.

c. *Return.*

The search warrant shall be returned to the issuing judge, or in his absence to another judge of the same circuit in which the search warrant was issued, as promptly as possible and in any event within five days from the date the search warrant was executed or within such earlier time as may be set forth in the search warrant for its return. The return shall be accompanied by a copy of the inventory made pursuant to section a of this Rule.

d. *Filing with Clerk.*

along with Maryland Rule 707, which is also challenged. Article 27, sec. 418A, referred to in the argument but not attacked, is set out in note 3.

In the event the search warrant was executed, the judge to whom the return was made shall attach thereto the return, a copy of the inventory and all other papers in connection therewith and shall file them with the clerk of the criminal court for the county in which the property was seized. In the event the search warrant was not executed, the judge to whom it was returned may destroy the search warrant and accompanying papers or make such other disposition thereof as he deems proper.

e. *Inspection of Warrant, Inventory and Other Papers.*

Upon motion by a person from whom or from whose property was taken under a search warrant or by a person having an interest in such property or by a person aggrieved by search or seizure, the criminal court of the county in which the search warrant is filed, shall order that the warrant, inventory and other related papers be made available to such person or to his attorney or that such person or his attorney be permitted to inspect and copy them. Upon filing of such motion, the court may in its discretion order that notice thereof be given to the State's Attorney.

f. *Secrecy.*

1. Generally.

A search warrant shall be issued with all practicable secrecy and the affidavit or other papers upon which it is based shall not be filed with the clerk or made public in any way unless the search warrant is issued and executed. After a search warrant has been executed the search warrant, inventory and other papers filed with the clerk in accordance with section d of this Rule shall be confidential, except as provided by court order pursuant to section e of this Rule.

2. Contempt.

A person who discloses, prior to its execution, that a search warrant has been applied for or issued, except so far as may be necessary to its execution, or a public officer or employee who discloses, after the execution of a search warrant the contents of the warrant or any other papers connected therewith including an inventory, except by service pursuant to this Rule or by court order pursuant to section e of this Rule, may be proceeded against for criminal contempt of court.

3. § 418A. Injunctive remedy.

The circuit courts of the counties and the equity courts of the Supreme Bench of Baltimore City have jurisdiction to enjoin the sale or distribution of any book, magazine, or any other publication or article (including a motion picture film or showing) which is prohibited from sale or distribution, as hereinafter specified.

1. The State's attorneys of the counties and Baltimore City in which a person, firm or corporation sells or distributes or is about to sell or distribute or has in his possession with intent to sell or distribute or is about to acquire possession with intent to sell or distribute any book, magazine, pamphlet, newspaper, story paper, writing paper, picture, card, drawing or photograph (including a motion picture film or showing) or any article or instrument of use which is obscene, within the meaning of § 418 of this article may maintain an action for an injunction against such person, firm or corporation in the circuit court of the counties or the equity courts of the Supreme Bench of Baltimore City to prevent the sale or further sale or the distribution or further distribution or the acquisition, publication or possession within this State of any book, magazine, pamphlet, newspaper, story paper, writing paper, picture, card, drawing or photograph (including a motion picture film or showing), or any article or instrument of use which is obscene.

2. The person, firm, or corporation sought to be enjoined is entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days after the conclusion of the trial.

3. In the event that an order or judgment be entered in favor of the State's attorney and against the person, firm or corporation sought to be enjoined, such final order or judgment shall contain a provision directing the person, firm or corporation to surrender to such peace officer as the court may direct or to the sheriff of the county in which the action was brought any of the matter described in this section and such sheriff or officer shall be directed to seize and destroy the same.

4. In any action brought pursuant to the provisions of this section, the State's attorney is not required to file any bond before the issuance of an injunction order provided for by this section, is not liable for costs and is not liable for damages sustained by reason of the injunction order in cases where judgment is

Plaintiff operates an "adult book store" in Baltimore, dispensing "adult-type" publications and materials. He alleges, and we must assume for the purposes of this motion, that no sales or offerings are made to minors under 18 of any "adult-type materials," and that minors "are not permitted to browse or view the materials on display for sale." Plaintiff does not allege that minors are not permitted in the store, or that minors are not sold publications other than "adult-type materials."

On May 16, 1968, defendants [4] obtained from a judge of the Supreme Bench of Baltimore a search warrant authorizing the search and seizure from plaintiff's premises of "Obscene Publications, that is, Magazines entitled *Modern Girls*, Number 7." A copy of the magazine had been *purchased* by a detective at plaintiff's store. The judge examined a copy of the magazine, but held no adversary proceeding before the warrant was issued. Nothing was taken during the search, but shortly thereafter the grand jury returned (1) an indictment against Lucille Adler for selling that magazine, which was charged to be obscene, and (2) an indictment against her and plaintiff herein for possessing with intent to distribute certain obscene material, to wit: that magazine.

On November 20, 1968, defendants obtained from a judge of the Supreme Bench, without prior adversary hearing, but after the judge had examined a copy of "Coquette No. 4," which had been purchased by defendants at plaintiff's store, a warrant authorizing the search and seizure from plaintiff's premises of "One magazine entitled COQUETTE No. 4, depicting nude and semi-nude females posing with genitalia exposed; photographs, magazines, film & other material depicting nude & semi-nude male and female persons and nude and semi-nude female persons embracing and engaging in sexual activities." Pursuant to that warrant, defendants seized a total of eleven copies of ten different magazines or books. No copy of "Coquette No. 4" was seized. On November 22, 1968, the grand jury indicted (1) Michael J. Owens, an employee of plaintiff, for selling "Coquette No. 4" to the officer, and (2) Owens and plaintiff herein for possessing with intent to distribute certain obscene matter, to wit: Coquette No. 4 and the ten magazines which had been seized.[5]

Purchases from and seizures at the premises of other dealers were made on both occasions, and some 39 indictments had been filed before November 29, 1968, including the four referred to in the preceding paragraphs.

On November 29, 1968, an action entitled Kramer, et al. v. Pomerleau, et al., Civil No. 20151, in which plaintiff herein was one of the plaintiffs, was filed in this court, seeking: (1), (2) temporary and permanent injunctions against further seizures without prior adversary hearings, and return of the property theretofore seized; (3), (4) temporary and permanent injunctions against the prosecution of any pending or future indictments based on or resulting from such seizures; and (5) damages. At a

---

rendered in favor of the person, firm or corporation sought to be enjoined.

5. Every person, firm or corporation who sells, distributes or acquires possession with intent to sell or distribute any of the matter described in this section, after the service upon him of a summons and complaint in an action brought by the State's attorney of the county or Baltimore City pursuant to this section is chargeable with knowledge of the contents thereof.

4. For convenience, the word defendants will be used to embrace the officers, as-

sistants and agents of either or both defendants.

5. Plaintiff alleges that the prosecution should have been brought in the Municipal Court under article 26, §§ 109(a) (40a), and (b) of the Code, but he did not argue that point at the hearing on the motion to abstain nor, apparently, in connection with the motion to dismiss the indictments which was filed and argued in the Criminal Court.

conference with counsel in that case, it appeared that motions challenging the legality of the warrants and seizures had been filed in the cases then pending in the Criminal Court based on the May 1968 and November 1968 indictments. It was suggested and counsel for all parties in the *Kramer* case consented that this court should refrain from further action in that case until the motions filed in the Criminal Court cases were decided by the Criminal Court.

Those motions were heard promptly, and on January 3, 1969, Judge Harris filed an opinion and order in those cases holding that:

1. An adversary hearing, prior to the issuance of a search and seizure warrant, is not mandatory when hard-core pornography is the property described in the application for the warrant.

2. The magazines and photographs which were shown to and examined by the judges who issued the warrants in these cases constitute hard-core pornography.

3. The defendants who are licensees of the stores, which were searched under the authority of the warrants and/or the owners of the seized property, are subject to prosecution by the State under the applicable Maryland statutes.

Judge Harris overruled all motions filed in the 39 indictments "to the extent of the above findings." [6]

After that ruling no motions for speedy trial were filed in any of the cases in the Criminal Court and the State did not set them for trial.[7] Nor was any effort made by any of the plaintiffs in the *Kramer* case in this court to bring that case on for trial or other decision.

On September 22, 1969, defendants obtained from a judge of the Supreme Bench without a prior adversary hearing, but after the judge had examined two magazines, "Les Two" and "Doubles," Vol. 1, No. 1, which an officer had purchased at plaintiff's store, a warrant authorizing a search and seizure from plaintiff's premises of "Books, photographs, film, magazines, and other printed matter containing pictures portraying males and/or females who are nude and whose genitals are prominently and suggestively exposed and whose pose suggest that they are engaged in some form of bi- or homo-sexual activity, including masturbation, fellatio, connilingus, anal and/or vaginal intercourse." Pursuant to that warrant defendants seized on the same day 197 copies of 67 different magazines, 142 copies of a paper or magazine entitled "Kiss" and 241 copies of a paper or magazine entitled "Screw." Shortly thereafter, two

6. Judge Harris described the material in considerable detail, as well as the procedures which had been followed by the officers. He based his decision largely on (1) the statement in the plurality opinion in A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), that the Kansas statutory procedure "did not adequately safeguard against the suppression of non-obscene books," and that that opinion did not reach, and did not pass upon, the question of the alleged obscenity of the seized books; (2) the opinion in Donnenberg v. State, 1 Md.App. 591, 232 A.2d 264 (1967), and cases cited therein; and (3) the definition of "hard-core pornography" quoted by Mr. Justice Stewart from the brief of the Solicitor General in Ginzburg v. United States,

383 U.S. 463, 499, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) (Stewart, J., dissenting).

7. Counsel for defendants herein stated at the recent hearing that the State had not set them for trial because of the pressure of other, more serious cases, especially those in which defendants were being held in jail. The pressure of business in the Criminal Court is a matter of common knowledge. Motions for speedy trial had been filed in some or all of the twelve May 1968 indictments before the hearing on the motions in December, 1968. Those motions were not renewed. No motions for speedy trial have been filed in any of the later indictments, including those referred to on pages 3 through 6 of this opinion.

indictments were filed, one charging plaintiff herein with unlawfully distributing certain specifically described obscene material.

On October 20, 1969, without a prior adversary hearing, but upon affidavit and exhibition of Volumes 25 and 26 of a newspaper called "Screw" purchased by a detective of the Baltimore City Police Department, a search and seizure warrant authorizing the seizure from plaintiff's premises of property "pertaining to obscene publications" was issued. One hundred eight copies of a newspaper entitled "Screw," 5 reels of 8 mm color film, 21 magazines and 2 books were seized, and shortly thereafter plaintiff herein and another were again indicted for possession with intent to distribute certain specifically described obscene material.

Finally, on December 2, 1969, following similar proceedings as in the previous paragraph, 526 copies of 144 items were seized. No indictments followed that seizure.

No proceedings to suppress or to secure the return of any material seized in September, October, and December, 1969, have been filed in any state court, either in the criminal prosecutions filed in September and October, or otherwise.

Some of the indictments resulted from purchases before the searches and seizures; no motions to suppress would lie with respect to those indictments, although other points raised herein could be raised in defense of the prosecutions.

The complaint herein was filed on December 8, 1969. It alleges most of the facts set out above, that plaintiff has been forced to curtail his business from time to time, that defendants' actions have and perpetuate a "chilling effect" on the exercise of plaintiff's first amendment rights as well as the right of the citizens of Maryland and the other 49 states who may visit the State of Maryland who wish to exercise their first amendment right to buy, receive, and view non-obscene publications and films.

The complaint then sets out at length the alleged "basis in law for relief" contending: that sec. 417 and sec. 418 of article 26 of the Maryland Code are facially unconstitutional for 10 different reasons; in the alternative, that they have been unconstitutionally applied for 6 reasons; that sec. 551 is facially unconstitutional for 8 reasons and has been unconstitutionally applied for 11 reasons; and that "there was no constitutionally relevant evidence to support probable cause presented * * * to the Grand Jury in securing the criminal indictments herein, nor was there any reasonable or probable cause to believe that any publications charged under these indictments are obscene in the constitutional sense," for 7 reasons. Plaintiff further alleges that there was no intensive advertising or pandering; and that the publications do not "animate" sexual activity and are not "hard core" pornography, as that term has been defined by Mr. Justice Stewart in Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), "and about which several justices apply a not 'dissimilar standard' in Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515; " and that the "publications which were purchased and on which the ex parte warrants were issued, cannot be presumed to be utterly without social value." Plaintiff claims that his rights under the first, fourth, fifth, sixth, and fourteenth amendments have been violated, and sets out repetitively the relief requested, which was outlined at the beginning of this opinion.

At the hearing on the motion to abstain, defendants renewed and amplified the alternative suggestions which they had made at the preliminary conference in this case. They offer: (1) to set for trial immediately all 5 of the criminal prosecutions against plaintiff; (2) to nol pros any of those cases based upon material seized from plaintiff under general warrants and to return the material seized from plaintiffs under general warrants; (3) if convictions are obtained in any of the cases against plaintiff, to cause any appeals therein to be placed

on an advanced appellate calendar; (4) until the criminal cases against Adler are concluded, to refrain from further raids based on general warrants or *ex parte* warrants issued under sec. 551 of article 27, reserving the right (a) to arrest or prosecute or both based upon a purchase of an individual item or items, and (b) to obtain warrants under the procedures set out in sec. 418A of article 27 (see note 3); and (5) to return all but one or two copies of each magazine or other item seized from plaintiff under specific warrants heretofore issued under sec. 551, and, if any items were seized incident to an arrest, to keep only those which were purchased.

Recently there has been a flood of decisions attempting to cope with obscenity. These cases vary as to facts and statutes applied and construed. Another analysis of this rapidly expanding and confusing field of law could not supply any new delicacy to this smorgasbord. Particularly is this so when one observes that members of the Supreme Court have written 55 separate opinions in 13 cases on the subject of obscenity in the 10 years prior to 1968 and have not been able to agree on what it is or how to deal with it.

Continually suits are filed by dealers and exhibitors carrying the torch of the first amendment, not only, they say, for their rights of freedom of expression but also the right of the "rich and poor Stanleys" to indulge in a freedom of choice. *See* Karalexis v. Byrne, 306 F.Supp. 1363, 1367 (D.Mass.), stay granted, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447, 486 (1969), prob. juris. noted, 397 U.S. 985, 90 S.Ct. 1123, 25 L.Ed.2d 394 (1970). We cannot help but observe that this latter helping hand is not entirely altruistic.

Be that as it may, the demands of this type of litigation on the federal courts seriously delay the resolution of important matters pending in all jurisdictions.

This is not to say that the problem of obscenity is minimal, for it is a serious one. It is best expressed in Jacobellis

v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964), where the problem is said to be "to reconcile the right of the Nation and of the States to maintain a decent society and, on the other hand, the right of individuals to express themselves freely in accordance with the guarantees of the First and Fourteenth Amendments."

Defendants have urged that this court abstain from "granting the relief sought in the complaint filed herein, or otherwise passing upon the issues raised in the complaint, pending resolution of those issues by the Criminal Courts of the City of Baltimore, State of Maryland." Whatever force this argument may have in the normal context, *see* Note, 80 Harv. L.Rev. 604 (1967), the Supreme Court has indicated that special attention must be given where, as here, "the attack upon the statute is for repugnancy to the First Amendment." Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). The Court's language indicated that it felt abstention improper in such a circumstance, where "to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Id.* at 252, 88 S.Ct. at 397. Basically, this case involves an attack by the plaintiff on two facets of state law as it pertains to him. First, he attacks the procedure whereby certain materials were seized and arrests made without a prior adversary hearing on the issue of obscenity. Second, the plaintiff attacks the Maryland obscenity statutes, art. 27, Md.Code Ann., secs. 417 and 418 (1967 Repl. Vol.). He further requests an injunction against the continuation of state prosecution. For reasons which will appear below, we agree with a portion of his first contention, and are granting relief on that question.

From the facts of this case, it appears that the prosecutions in question are based on evidence obtained in one of two ways. Some of the evidence was purchased by defendant at the plaintiff's

store. The bulk of the material, however, was obtained as the result of seizures made pursuant to warrants which were issued without any prior adversary hearing on the question of the obscenity of the material to be seized. It is clear, then, that before we are presented with the issue of the constitutionality of the Maryland statutes, we must decide whether the procedure followed in the latter classification of cases was constitutionally permissible.

Although this issue has been the subject of too many recent opinions to list here,[8] we feel that the language of A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964), and Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969) is controlling as to seizure without an adversary hearing. In *Quantity of Books*, an *ex parte* order of a Kansas trial court authorizing seizure and destruction of allegedly obscene novels was reversed by the Supreme Court. In so doing, the Court stated that the Constitution requires a procedure "designed to focus searchingly on the question of obscenity." The Court therefore concluded that "in not first affording P-K [news service] an adversary hearing, the procedure leading to the seizure order was constitutionally deficient." 378 U.S. at 210–11, 84 S.Ct. at 1726. Similarly, in *Tyrone, supra*, the Fourth Circuit, finding support in Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968), held that a prior adversary hearing is a constitutional prerequisite to seizure of a motion picture for violation of obscenity laws. In reaching this decision, the court stated that for this purpose, there was no significant difference between motion pictures and books. The court further stated:

The hearing, of course, is not designed to facilitate the display of obscene material, for public obscenity is not constitutionally protected. Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); see Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (dictum). On the contrary, as the opinion of the Court in *A Quantity of Books* makes clear, the purpose of the hearing is to safeguard against governmental suppression of nonobscene expression. With movies, as with books, "the separation of legitimate from illegitimate speech calls for * * * sensitive tools * * *." [citations omitted] 410 F.2d 639, at 641.

In the case before us, it is admitted that no adversary hearing took place before the issuance and execution of the warrants pursuant to which the material in question was seized. It is equally clear that, in view of our above statements, material seized pursuant to these warrants must be returned. Article 27, sec. 551, Md.Code Ann. (1967 Repl.Vol.) cannot constitutionally be applied to this type of situation. It should be noted, however, that sec. 551 does not preclude an adversary hearing and such a proceeding would seem consistent with sec. 418A of article 27 (injunctive procedure). Therefore, the defendants will be enjoined from seizing allegedly obscene material in the future without a prior adversary hearing on the issue of obscenity.[9] The State may retain that material

8. For a complete survey, see Carroll v. City of Orlando, 311 F.Supp. 967, (M.D. Fla.1970) (3-judge court).

9. In *Tyrone*, 410 F.2d 639, 641, the Fourth Circuit establishes certain guidelines in reference to an adversary hearing:
In holding that the Constitution requires an adversary hearing to determine obscenity before seizure of a movie, we do not imply that the hearing must be a fully matured action at law.

Matters of comparable importance are often determined on an application for a preliminary injunction, after notice to the adverse party and an opportunity for him to be heard. Cf. Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). An order to show cause why the film should not be seized as obscene presents another possibility. Va.Code Ann. § 18.1–236.3 (1960), as amended, (Supp.

which it purchased, as enumerated in the various affidavits filed as exhibits in this case, but must return the remainder.

The plaintiff in this case also asks us to declare that a similar adversary hearing is a constitutional prerequisite to an arrest on obscenity charges. From the complaint filed in this case, it appears that arrests were made only after indictment. Therefore, we are not presented with, nor do we decide, the question of what procedure must be followed prior to indictment; we merely pass on the procedure employed in this case—purchase, indictment, arrest.

■ Although several recent cases have enunciated the general proposition that an adversary hearing on the issue of obscenity of the publications in question must be held before arrest, Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La.1969) (3-judge court); Sokolic v. Ryan, 304 F.Supp. 213 (S.D.Ga.1969); Cambist Films, Inc. v. Illinois, 292 F.Supp. 185 (N.D.Ill. 1968), we do not feel, on the facts presented to us, that this is an entirely proper view. The basic justification for this view is that a procedure which does not include an adversary hearing prior to arrest acts as a prior restraint on the exercise of first amendment rights. We believe, however, as did the court in Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969) (3-judge court), aff'd, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970), that on balance the traditional criminal process, with its established safeguards, is "surely permissible, and very possibly preferred, [as a vehicle] for enforcing bans against obscenity." Id. at 297. In reaching its conclusion, the court said:

It is of interest in this connection, if by no means decisive, that plaintiffs' theory, if accepted, would have invalidated both federal and state convictions under obscenity statutes which

1968). But in whatever form, the proceedings must be "designed to focus searchingly on the question of ob-

have in the recent past been upheld by the Supreme Court. Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). A point of greater importance, both as a matter of legal history and practical judgment, is the fact that the prior adversary proceeding the plaintiffs demand would not serve to eliminate either the "chill" or the "prior restraint" against which they contend. It does not appear that there were any arrests in the present cases before a judicial officer had scrutinized the materials and determined that warrants should issue. All that, like the proceedings of a grand jury, was accomplished *ex parte*—without either the possible benefit to the accused or the potentially "chilling" effect upon others of adversary proceedings. The result, at least in terms of history, is to avoid any traditional form of "prior restraint" because the first overt impact upon the allegedly protected area comes at a time when all the protections and favorable presumptions of the criminal process are available to the defendant. 305 F.Supp. at 296–97.

We are convinced that the requirement of an adversary hearing prior to seizure, in combination with the traditional safeguards inherent in a criminal prosecution, will adequately protect the plaintiff's first amendment rights.

■ The questions of the constitutionality of the state obscenity statutes and injunctive relief against prosecutions pursuant to those statutes present a more delicate balancing problem. 28 U.S.C. sec. 2283 provides that:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Con-

scenity." Marcus v. Search Warrants, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961).

gress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Although unquestionably, in certain narrowly defined areas, a federal court may enjoin state prosecutions, *see* Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), this statute, "regardless of the ultimate extent of its reach is at least and unquestionably a rule of comity. It evidences the historic concern of Congress over the 'special delicacy of the adjustment to be preserved between federal equitable power and state administration of its own law * * *.'" Carter v. Gautier, 305 F.Supp. 1098, 1101 (M.D.Ga.1969).

■■ In this case we have to strike a balance between protection of the first amendment rights of the plaintiff, and the maintenance of the federal system of administration of justice. In *Dombrowski, supra,* in addition to the allegation of a facially unconstitutional statute, the complaint also contained allegations of bad faith enforcement by state officials. Although the plaintiff intimated that such bad faith existed in this case, we fail to see any evidence whatsoever of any conduct other than an attempt to fairly enforce the laws of the State of Maryland. Furthermore, before a federal court will intervene in a state criminal prosecution, there must be a showing of danger of irreparable injury, both "great and immediate." Douglas v. Jeanette, 319 U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). It is also clear that the injury "incidental to every criminal proceeding brought lawfully and in good faith" does not constitute such irreparable injury. *Id.* at 164, 63 S.Ct. at 881. *See also* Zwickler v. Koota, *supra.* We feel that by requiring a prior adversary hearing before a seizure of material can take place, we have protected plaintiff's important first amendment rights. It is clear that a state has the power to regulate obscenity. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Since the procedure which we adopt today will afford the plaintiff the maximum protection against arbitrary suppression of constitutionally protected material, we do not feel that injunctive relief is proper.

■ Although it is clear that the questions of injunctive and declaratory relief are not the same, and a request for declaratory relief must be considered separately from the consideration of injunctive relief against the enforcement of that statute, we conclude that declaratory relief is not proper under these circumstances. In Zwickler v. Koota, *supra,* the Supreme Court stated that federal courts should not abstain from declaring constitutional rights arising from the first amendment, except where a state statute is susceptible to a construction by a state court "that would avoid or modify the constitutional question." 389 U.S. at 249, 88 S.Ct. at 396. In this case the plaintiff does not challenge the right of a state to regulate obscenity. Rather the plaintiff challenges the state's right to regulate sales of material which are not made to minors, not offered in such a manner so obtrusive as to make it impossible for an unwilling individual to avoid exposure to them, and not in a manner which amounts to pandering within the principles stated in Ginzburg v. United States, 383 U.S. 463 at 465–66, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). While it is unclear whether sales made under these circumstances are constitutionally protected, *see* Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 1498 (1969); Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass.), stay granted, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447, 486 (1969), prob. juris. noted, 397 U.S. 985, 90 S.Ct. 1123, 25 L.Ed.2d 394 (1970); United States v. 4,400 Copies of Magazines, 276 F.Supp. 902 (D.Md.1967), it is clear that the statutes in question are susceptible to a constitutional construction in either event. For this reason we feel that this determination should be left to the courts of the State of Maryland.

Counsel will prepare an order in accordance with this opinion.

THOMSEN, District Judge, concurs.

SOBELOFF, Circuit Judge (concurring).

I concur in the judgment of the court. I would, however, add one comment on the court's disposition of plaintiff's argument that, under the rationale of Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), the Maryland obscenity statutes are overbroad. Ordinarily I would think it our duty to meet the issue on the merits, since the statutes do not seem to me susceptible to constructions that would completely avoid the constitutional question. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). However, the Supreme Court has before it a case, already argued, involving similar questions of federal abstention as well as the substantive First Amendment issue. Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass.), stay granted, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447, 486 (1969), prob. juris. noted, 397 U.S. 985, 90 S.Ct. 1123, 25 L.Ed.2d 394 (1970). In these circumstances I agree that our most propitious course is to defer decision on the point.