**MODERN SOCIAL EDUCATION, INC.** and Maryland Adult Sex Education Club by its President, Richard Kivert, Plaintiffs,

v.

David PRELLER et al., Defendants.

The **AGE OF MAJORITY EDUCATIONAL CORPORATION** and Glen Burnie Adult Sex Education Club by its President, David Wilder, Plaintiffs,

v.

David PRELLER et al., Defendants.

Civ. Nos. 72-1202-H, 72-1203-H.

United States District Court,
D. Maryland.
Jan. 12, 1973.

Burton W. Sandler and Sandler & Seekford, Towson, Md., and Mel S. Friedman, Houston, Tex., for plaintiffs.

Francis B. Burch, Atty. Gen. of Maryland, and Thomas G. Young, Asst. Atty. Gen., Baltimore, Md., for defendants.

HARVEY, District Judge:

The pending litigation is but another battle in the long standing war between enforcement officials of the State of Maryland and those who seek to show or distribute sexually oriented films or printed materials in the City of Baltimore.[1] At issue in the engagements to date and in these two cases is the constitutionality of Maryland's motion picture censorship and obscenity laws.

In Adler v. Pomerleau, 313 F.Supp. 277 (D.Md.1970), the proprietor of a so-called "adult book store" located in the City of Baltimore challenged the constitutionality of §§ 417, 418 and 551 of Article 27 of the Annotated Code of Maryland (1967 Repl. Vol.). Plaintiff there sought to enjoin the Baltimore City Police Commissioner and the State's Attorney for Baltimore City from making arrests or seizures of publications without a prior adversary proceeding on the issue of obscenity and from prosecuting certain criminal cases then pending in the Criminal Court of Baltimore City charging plaintiff with violations of the Maryland obscenity laws. The case was heard by a three-

---

1. Previous cases have involved locations in the City of Baltimore. Civil No. 72– 1203–H herein involves a location in Glen Burnie, Anne Arundel County, Maryland.

judge court in this District, and in an opinion by Judge Northrop the Court ruled that a state has the power to regulate obscenity, that the statutes in question were susceptible to a constitutional construction, and that injunctive relief against state enforcement of the laws in question was improper.[2] 313 F.Supp. at 287. The Court further ruled that before allegedly obscene printed materials could be seized, a prior adversary hearing on the issue of obscenity should be held. 313 F.Supp. at 286–287.

More recently in Star v. Preller, 352 F.Supp. 530 (D.Md.1972), the manager and operator of an establishment known as the Gayety Book Store, located at 407 E. Baltimore Street, challenged the constitutionality of various provisions of Article 66A of the Annotated Code of Maryland, which is the Maryland motion picture censorship law.[3] At his Baltimore Street location, Al Star provided motion pictures in coin-operated machines to be shown to individuals in private booths.[4] Plaintiff sought to enjoin the Maryland State Board of Censors, the Commissioner of the Baltimore City Police Department, the Attorney General of the State of Maryland and other officials from enforcing state censorship laws against him and his corporations.[5] That case was likewise heard before a three-judge court.[6] In an opinion by Judge Young, the Court found that Article 66A met constitutional requirements both on its face and as applied. The Court accordingly denied plaintiff's request for declaratory and injunctive relief against the State officials named as defendants.

Hardly was the ink dry on Judge Young's opinion in the Star case before efforts were undertaken to conduct operations at 407 E. Baltimore Street in a somewhat different manner than theretofore. Articles of Incorporation of Modern Social Education, Inc., one of the plaintiffs herein, were received and approved by the State Department of Assessments and Taxation of Maryland on October 31, 1972. The avowed purpose of such corporation was to provide adult sex education, and the charter further provided that the corporation was not organized for profit. Operations of the corporation were to be conducted at 407 E. Baltimore Street, the same premises previously occupied by the Gayety Book Store. At about the same time, one Al Star and certain others formed a new club called "Maryland Adult Sex Education Club." On October 28, 1972, such Club adopted a constitution and by-laws, and one Richard Kivert was elected president. The stated purposes of the Club were to provide an association of adult members in a forum whereby consenting adults might learn and understand more about sexual matters and sexual techniques. One of the locations utilized by the Club was to be 407 E. Baltimore Street.

At about the same time, a separate corporation with similar stated objectives was formed entitled "The Age of Majority Educational Corporation" and a separate club was organized called "Glen Burnie Adult Sex Education Club." The charter of such corporation and the constitution and by-laws of such Club are practically identical to those of

2. The Court in the *Adler* case consisted of Circuit Judge Sobeloff and District Judges Northrop and Thomsen.

3. The plaintiff in that case operated another such establishment at 205 W. Fayette St., but the complaint dealt mainly with occurrences at 407 E. Baltimore Street.

4. Such operations are often referred to as "peep shows," and the term "film" in § 1 of Article 66A has been construed by the Court of Appeals of Maryland to include the showing of motion pictures in such manner. Star v. Preller, *supra*; Sanza v. Maryland State Board of Censors, 245 Md. 319, 226 A.2d 317 (1966).

5. The attorney for the plaintiff in that case was Burton W. Sandler, Esq., the same local attorney for the plaintiffs here.

6. The Court in the *Al Star* case consisted of Circuit Judge Sobeloff and District Judges Young and Blair.

the corporation and Club mentioned in the preceding paragraph. However; such corporation and such Club was to occupy the premises at 115 Crain Highway, Glen Burnie, Anne Arundel County, Maryland.

On November 24, 1972, two separate civil actions were filed herein, these being the cases presently before the Court. In both actions, the named defendants were the Maryland State Board of Censors, the Commissioner of the Baltimore City Police Department, the Attorney General for the State of Maryland and the State's Attorney for Baltimore City. In Civil No. 72–1202–H, the plaintiffs are Modern Social Education, Inc., and Maryland Adult Sex Education Club. In Civil No. 72–1203–H, the plaintiffs are The Age of Majority Educational Corporation and Glen Burnie Adult Sex Education Club.[7] Local counsel for the plaintiffs are the same as in the *Star* case. In these two cases, the plaintiffs challenge the constitutionality of both Article 66A of the Annotated Code of Maryland and of § 418 of Article 27 of the Code. In complaints that are almost identical, plaintiffs allege that over the past two years there has been a history of arrests and seizures of books, magazines and films at the two locations at 407 E. Baltimore Street and 115 Crain Highway, that recently the Attorney General has obtained authority from the Governor of the State to prosecute alleged obscenity and movie censorship violations, and that various police officers and state officials have recently raided various book stores and film arcades in the City for the purpose of prosecuting the owners thereof. As relief, plaintiffs in these two actions seek a temporary restraining order, a preliminary injunction and a permanent injunction enjoining and restraining the defendants from issuing criminal process including search warrants, from making arrests, seizures or prosecutions against plaintiffs and "from engaging in any conduct which might in any way interfere" with operations of plaintiffs. The plaintiffs also seek a declaratory decree to the effect that various provisions of Article 66A and of Article 27 are unconstitutional. Plaintiffs have further prayed for the convening of a three-judge court under 28 U.S.C. § 2281 et seq.

On December 8, 1972, a hearing was held on plaintiff's motion for a temporary restraining order. After hearing argument, this Court ruled that plaintiffs had not met their burden of showing irreparable injury. An Order denying the motion was thereupon entered.

That same day, December 8, 1972, defendants filed motions to dismiss in both cases, together with supporting affidavits. The Court directed the plaintiffs to file oppositions to such motions and agreed to hear arguments on defendants' motion before deciding whether to certify this case to the Chief Judge of the Fourth Circuit for the convening of a three-judge court.

On December 11, 1972, certain police officers of the Baltimore City Police Department obtained a search and seizure warrant from Judge John Hargrove of the District Court of Maryland authorizing a search of the premises at 407 E. Baltimore Street and the seizure of films being displayed in coin-operated machines there, allegedly in violation of Article 66A. Such warrant was served upon representatives of the plaintiffs that same afternoon, and, acting pursuant thereto, police officers entered the premises and seized 13 films from coin-operated machines located inside. On December 12, 1972, plaintiffs filed a second motion for a temporary restraining order, reciting these facts, claiming that entry into their premises had been forcibly made and again asking this Court to enjoin defendants from making further arrests or seizures at the premises in

---

7. The Baltimore City Police Commissioner and the State's Attorney for Baltimore City have been erroneously named as defendants in Civil· No. 72–1203–H. They have no authority to make arrests or prosecute criminal cases in Anne Arundel County where the Club premises are located.

question.[8] Another hearing was held with counsel for both sides in attendance, and again this Court declined to sign a temporary restraining order.

On December 15, 1972, officers of the Baltimore City Police Department secured another search and seizure warrant from Judge Roland J. Gerstung of the District Court of Maryland, again entered the premises at 407 E. Baltimore Street and on this occasion seized 11 films from the coin-operated machines located there.[9] On December 20, 1972, plaintiffs filed a third motion for a temporary restraining order.[10] At a conference with counsel held immediately after such filing, defendants agreed that there would be no further seizures until a hearing could be held on defendants' motions to dismiss. It was further agreed that plaintiffs' third motion for a temporary restraining order would be heard at the same time as the motions to dismiss. The hearing was thereupon scheduled for December 28, 1972.

When the President by Executive Order declared December 28, 1972 to be a National Day of Mourning for former President Truman, the hearing was cancelled and rescheduled for January 5, 1973. On December 29, 1972, plaintiffs filed an amended complaint which sought to add as additional parties defendant six Baltimore City police officers and State Judges Hargrove and Gerstung. When the amended complaint was brought to the attention of the undersigned judge on January 2, 1973, the Clerk was instructed to withhold the issuance of summonses and the service of process on the new parties because it did not appear that plaintiffs had theretofore secured an order of Court permitting the adding of additional parties as required by Rule 21 of the Federal Rules of Civil Procedure. Kennan v. Warren, 328 F.Supp. 525, 528 (W.D.Wis.1971), aff'd 404 U.S. 1055, 92 S.Ct. 735, 30 L. Ed.2d 743 (1972); see 3 Moore, Federal Practice, ¶ 15.07[2] at p. 858.

On the afternoon of January 3, 1973, plaintiffs filed a motion to disqualify the undersigned judge pursuant to 28 U.S.C. §§ 144 and 455.[11] After reviewing the motion and affidavit, the undersigned judge denied such motion for the reasons stated in an oral opinion rendered in open court on January 5, 1973. That same day after a hearing, defendants' oral motion to strike the amended complaint was granted, without prejudice to the right of the plaintiffs to apply to the Court under Rule 21, after a ruling on the pending motions to dismiss, for the right to file an amended complaint adding new parties. Thereafter, argument was heard in support of and in opposition to defendants' motions to dismiss the pending cases. Extensive briefs and various affidavits had previously been filed by the parties.

I

Plaintiffs first contend that a single judge has no jurisdiction to hear a motion to dismiss in a case in which a three-judge court has been sought. Whatever may be the rule in other jurisdictions, it is quite clear in this District and Circuit that a single district judge may dismiss suits such as these if the complaints do not state a substantial claim for injunctive relief to be presented to a three-judge court. Maryland

---

8. Plaintiffs claim that police officers broke down the door of the premises to gain entry. Defendants concede that force was used to gain entry but claim that such measures were taken only after the search and seizure warrant had been shown to the person in charge of the premises and after he had refused to permit the police officers to enter.

9. Apparently, the police officers entered the premises without the use of force on this occasion.

10. The second and third motions for a temporary restraining order were filed only in Civil No. 72–1202–H.

11. The affidavit filed in support of such motion stated, inter alia, that six District Judges of this Court and Circuit Judge Sobeloff were personally biased and prejudiced against the affiants.

**178**

Citizens v. Governor of Maryland, 429 F.2d 606, 611 (4th Cir. 1970); Jacobs v. Tawes, 250 F.2d 611 (4th Cir. 1957); Cornwell v. State Board of Education, 314 F.Supp. 340 (D.Md.1969), aff'd, 428 F.2d 471, cert. den. 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970); Shapiro v. State of Maryland, 336 F.Supp. 1205 (D.Md.1972). As the Fourth Circuit said in the Maryland Citizens case, *supra*, 429 F.2d at 611:

> "If it appears to the single district judge, therefore, that the complaint does not state a substantial claim for injunctive relief, he need not request the convening of a three-judge court. Insubstantiality in the claim may appear because of absence of federal jurisdiction, lack of substantive merit in the constitutional claim, or because injunctive relief is otherwise unavailable. Such insubstantiality may be evident from the frivolous nature of the claim or from previous decisions of the Supreme Court which require an adverse answer. When it thus appears that there is no substantial question for a three-judge court to answer, dismissal of the claim for injunctive relief by the single district judge is consistent with the purpose of the three-judge statutes, and it avoids the waste and delay inherent in a cumbersome procedure."

■ Defendants' motions to dismiss here raise several questions which are properly addressed to and may be decided by a single judge. First, defendants rely on Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and argue that a federal court should not interfere with pending or threatened state criminal prosecutions except under special circumstances which are not present here. Secondly, defendants argue that the recent decisions of this Court in Al Star v. Preller, *supra*, and Adler v. Pomerleau, *supra*, indicate clearly that there is no merit to the constitutional claims advanced in these cases by plaintiffs.

## II

■ The primary issue in this case is the applicability of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In that decision and five others handed down the same day,[12] the Supreme Court undertook a careful reexamination of the legal principles that apply when a federal court is asked to halt a criminal prosecution in a state court. One cannot read the six opinions handed down on February 23, 1971 and occupying 100 pages of volume 401 of United States Reports without concluding that the Supreme Court has now firmly established the rule that only in rare and exceptional cases may a federal court intervene in state criminal proceedings.

In the *Younger* opinion, Mr. Justice Black noted that from the beginning of this country's history, Congress has, subject to few exceptions, "manifested a desire to permit state courts to try state cases free from interference by federal courts." (401 U.S. at 43, 91 S.Ct. at 750). The primary sources of this long standing public policy include (1) the basic doctrine of equity jurisprudence that courts of equity should not restrain criminal prosecutions when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief, and (2) the notion of comity which is posited on a proper respect for state functions and a recognition that the national government will fare best if the states and their institutions are left free to perform their separate functions in their separate ways. (at 43–44, 91 S.Ct. 746). The national government, in protecting federal rights and federal interests, should always endeavor to do so in ways that will not unduly interfere with the legiti-

12. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

mate activities of the state. (at 44, 91 S.Ct. 746). The normal thing that a federal court should do when asked to enjoin pending proceedings in state courts "is not to issue such injunctions." (at 45, 91 S.Ct. at 751). In view of this fundamental policy against federal interference with state criminal prosecutions, even a showing of irreparable injury is insufficient for the issuance by a federal court of an injunction unless such injury is "both great and immediate." (at 46, 91 S.Ct. 746).

Following an extensive discussion of the principles underlying this fundamental policy, Mr. Justice Black then undertook to review the leading case of Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965) in the light of such analysis. At page 53 of 401 U.S., at page 755 of 91 S.Ct. of the *Younger* opinion, *Dombrowski* was interpreted as follows:

"For these reasons, fundamental not only to our federal system but also to the basic functions of the Judicial Branch of the National Government under our Constitution, we hold that the *Dombrowski* decision should not be regarded as having upset the settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions. We do not think that opinion stands for the proposition that a federal court can properly enjoin enforcement of a statute solely on the basis of a showing that the statute 'on its face' abridges First Amendment rights. There may, of course, be extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment."

In opposing the pending motions, plaintiffs contend that Younger v. Harris does not apply here because on the date that these suits were filed in federal court, there were no prosecutions pending in the State court. In *Younger* and the other cases decided the same day, with the apparent exception of

Boyle v. Landry, 401 U.S. at 80–81, 91 S.Ct. 674, state criminal proceedings were in fact pending at the time the federal proceeding was begun, and the Supreme Court expressed "no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." (401 U.S. at 41, 91 S.Ct. at 749). Several courts since *Younger* have held that decision inapplicable where State criminal proceedings were not commenced before nor begun during the pendency of the federal case. Wulp v. Corcoran, 454 F.2d 826 (1st Cir. 1972); Lewis v. Kugler, 446 F.2d 1343 (3d Cir. 1971); Anderson v. Vaughn, 327 F. Supp. 101 (D.Conn.1971). But see Wright, Federal Courts, 1972 Pocket Part, § 52, pages 24–25.

In this case, State criminal proceedings were not only threatened and expected by plaintiffs at the outset of the litigation but in fact were begun several weeks thereafter. Were this Court to now issue an injunction, it would halt State criminal proceedings presently under way. The allegations of the complaint clearly recognized the imminency on November 24, 1972 of criminal proceedings against the plaintiffs, and plaintiffs asked and are still asking this Court to enjoin the issuance of criminal process, the making of arrests and the instituting of prosecutions, as well as "any conduct" of state officials "which might in any way interfere" with the operation of the premises at 407 E. Baltimore Street and at 155 Crain Highway. At the hearing held on plaintiffs' first motion for a temporary restraining order two weeks after the complaints were filed, the attorney for the State stated that criminal investigations of plaintiffs' operations were then under way and were continuing. He further asserted on the record that as a result of such investigations, the State of Maryland intended to prosecute plaintiffs as soon as criminal proceedings could be instituted, unless previously restrained by this Court. On December 11, 1972,

three days after this Court had first declined to restrain the threatened State proceedings, prosecution of representatives of the plaintiffs in Civil No. 72–1202–H was begun by means of an application made to a judge of the State District Court for the issuance of a search warrant. On the date of the hearing on the pending motions to dismiss, state criminal proceedings had not only been begun but in fact hearings had already been scheduled.[13]

Were this Court to hold that Younger v. Harris is inapplicable because state criminal proceedings though expected had not been commenced on the date that the federal action was filed, this Court would be adopting a rule that would foster a race to the court house door. The legal principles which underlie *Younger* are hardly promoted by a ruling that the proper forum for deciding the constitutionality of state statutes is to be determined in a case of this sort by the party which first institutes proceedings. As undesirable as such a rule would be under other circumstances, it is particularly inappropriate here. In this case, the plaintiffs have rigged the race to the court house so that defendants would have no chance of winning. Neither investigation nor prosecution of plaintiffs by the State was even possible at any time before these federal actions were filed. Plaintiffs instituted these suits on November 24, 1972 and did not open for business at 407 E. Baltimore Street until November 27, 1972. Quite obviously they could not have been investigated nor prosecuted until they were in operation. Defendants' investigations in fact commenced on November 27, 1972, the first day that plaintiffs were open for business, and legal action was begun shortly thereafter when this Court indicated that it would not enter a temporary restraining order against State officials. This Court holds that Younger v. Harris bars the granting of federal injunctive relief in a case such as the present one in which criminal prosecution of the plaintiffs not only was expected and imminent at the time the federal action was filed but also was commenced within a short time thereafter.[14]

Plaintiffs further argue that the facts here make this the exceptional case in which an injunction should issue because of bad faith and harassment by State officials. The undisputed facts indicate otherwise.[15]

The complaint in Star v. Preller, *supra*, was filed in this Court on January 11, 1972. The State agreed not to prosecute the plaintiff in that case nor any other "peep show" operator until the three judge federal court had had an opportunity to rule on the constitutionality of Article 66A. In October, 1972, after the opinion in *Star* was filed, the State Board of Censors commenced its review of "peep show" films being exhibited by various commercial operators. Between October 15 and December 21, 1972, the Board of Censors reviewed 325 reels of such film submitted, of which 124 were approved and the remainder rejected. Pursuant to Section 19 of Article 66A, various operators petitioned the Circuit Court of Baltimore City for a review of the Board action. Prompt hearings were held in those cases as required by the statute.

The picture here is hardly that of precipitous enforcement action undertaken

---

13. A previously scheduled hearing in the State case was postponed at the request of counsel for the plaintiffs.

14. There is no indication in the record here that the State undertook criminal prosecution in the State court in an endeavor to avoid the effect of *Younger*. On the contrary, plaintiffs expected to be prosecuted, the State has indicated throughout that plaintiffs expectations were correct, and in fact prosecution has ensued promptly.

15. Both sides have filed affidavits in support of and in opposition to the motions to dismiss. Under Rule 12(b), F.R.Civ. P., this Court can consider the undisputed facts established by the affidavits as if the motions to dismiss had been filed under Rule 56. Findings have been made only as to facts which are not disputed by the affidavits.

in bad faith by the State pursuant to a statute of doubtful constitutionality. State enforcement officials waited 9 months for this Court to rule on the constitutionality of Article 66A. When the ruling was handed down, the State then undertook to prosecute those operators, including plaintiffs, which the State believed were violating the law.

Plaintiffs argue that they are not subject to prosecution as "peep show" operators because they are non-profit corporations and clubs formed for the purpose of promoting education about sexual matters and sexual techniques. Plaintiffs claim that they are exempt from prosecution under § 23 of Article 66A and under § 423 of Article 27. Under the aforesaid § 23, Article 66A does not apply to any noncommercial exhibition of film for purely educational purposes by any institution of learning. § 423 exempts from prosecution under State obscenity laws any persons possessing, or distributing materials for *bona fide* educational purposes.

In response to this argument, the State points to undisputed facts which the State claims indicate that plaintiffs' operations are commercial in nature and that plaintiffs are not *bona fide* educational organizations. The plaintiffs in Civil No. 72–1202–H have located their operations at 407 East Baltimore Street, the same place where Al Star previously operated a commercial book store owned by Gayety Books, Inc., and where customers could view "peep shows" and purchase other "adult materials." The Crain Highway location of the plaintiffs in Civil No. 72–1203–H is the same location previously raided by the State because of the location there of allegedly obscene materials. Plaintiffs thus have chosen to locate their allegedly non-profit educational activities in the so-called "Block" on Baltimore Street and at an Anne Arundel County location where patrons have been traditionally drawn for the purpose of viewing or purchasing sexually oriented films or printed materials. In "the Block" area of Baltimore Street are located night clubs, burlesque houses and book stores exhibiting or selling sexually oriented films or printed materials.[16] It is indeed a curious location for a non-profit corporation or club formed for educational purposes.

According to the affidavits, any one (except police officers) can become a member of the Club located at 407 E. Baltimore Street by signing an application form and paying $1.00 at the door. A membership card is then issued and the member is admitted to the premises. Should a police officer appear at the door, his name and badge number are recorded, and he is presented with a notice warning him "that if you enter these premises, whether forcibly or otherwise without a properly executed Search Warrant, *YOU WILL BE SUED, INDIVIDUALLY, IN FEDERAL COURT FOR MONEY DAMAGES.*" (Emphasis in original.)

Once inside the door, a person who has been issued such membership card may purchase printed sexual materials, or he may insert coins in coin-operated machines and view films depicting explicit sexual activity. Defendants' affidavits indicate the activities shown on the films include, *inter alia*, heterosexual intercourse, fellatio, cunnilingus, homosexual activities, group sex and sexual intercourse between an adult male and a female child of ten or eleven. The machines are the same as those utilized in adjoining commercial book stores, and the films are of the same type as those shown by other "peep show" operators.

Al Star himself is one of the organizers of the Maryland Adult Sex Education Club, having signed the Club's constitution.[17] Apparently, he also assists in running the Club's operations on

16. A description of the character of the neighborhood in the vicinity of 411 E. Baltimore Street on "the Block" is set forth in the *Sanza* case, *supra*, 245 Md. at page 327, 226 A.2d 317.

17. The signatures "Al Star" on pleadings in this case and in the *Star* case are identical.

Baltimore Street. On the afternoon of December 7, 1972, the attendant at the door of 407 East Baltimore Street identified himself as "Al Star" to an inspector of films for the State Board of Censors. The same Baltimore attorneys who represented the plaintiffs in the *Star* case likewise represent the plaintiffs here.

■■ But it is not for this Court to determine on this record whether, as claimed by the plaintiffs, their operations are *bona fide* or whether, as claimed by the defendants, these corporations and clubs are no more than flimsy facades erected to escape prosecution. Such a question is properly for the State courts to decide after all the evidence is heard. What this Court can and does decide from the undisputed facts in this record is that prosecution of plaintiffs under the circumstances here does not amount to bad faith harassment on the part of the State officials who have been named as defendants here. Plaintiffs are well able to vindicate the Constitutional rights they assert by their "defense of a single prosecution brought in good faith . . . ."[18] *Younger, supra,* 401 U.S. at 48, 91 S.Ct. at 752. Accordingly, plaintiffs are not entitled to injunctive relief in this Court because they have not suffered nor have they been threatened with any irreparable damage, much less any that is both "great and immediate." Plaintiffs have been threatened with no injury "other than that incidental to every criminal proceeding brought lawfully and in good faith" * * *. Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

### III

■ Another ground exists for dismissal of the complaints in these two cases. Essentially, these actions seek to re-litigate questions which have been recently ruled upon in two different cases in this Court.

Adler v. Pomerleau, *supra,* held that §§ 417 and 418 of Article 27 were facially constitutional and the Court there refused to enjoin enforcement of such statutes by State officials in the State courts.[19] It was further held that the State could not in the future seize allegedly obscene printed materials without a prior adversary hearing. No such seizures have occurred here, and none are threatened. The Assistant Attorney General on behalf of defendants in this case has represented on the record that the State of Maryland intends to follow this ruling and will not seize any printed materials of plaintiffs without a prior adversary hearing.

Under Star v. Preller, *supra,* however, there is no such requirement of a prior adversary hearing where films are seized because they have not been submitted for approval to the State Board of Censors and do not bear the required seal. Relying on Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) and Times Film Corp. v. Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961), this Court in *Star* upheld the constitutionality of the procedures in the Maryland statute for prompt judicial review of the films after their seizure. It is not disputed that the films seized here did not bear the required seal.

Plaintiffs argue that the *Star* case was wrongly decided and is being appealed. But until the Supreme Court overrules that decision or until its effect has been stayed pending appeal, it remains the law in the District of Maryland. No good purpose would be served by re-litigating in this case the constitutional questions already decided in *Star*.

Plaintiffs further contend that their attack against Article 66A is broader in this case than in *Star*. A review of

---

18. Although two separate State court prosecutions have been begun, they both present the same issues in the same court and can undoubtedly be consolidated for trial as a single state proceeding.

19. No appeal was taken from the *Adler* decision.

the complaint in that case indicates otherwise. In *Star*, the plaintiff in challenging the statute raised every constitutional argument that could conceivably have any merit. As the Court said in the *Star* opinion, the plaintiff there "unleashed a legal broadside against Maryland's Motion Picture Censorship statute * * *." It can therefore hardly be claimed that the constitutionality of Article 66A was not fairly and fully presented to the Court in *Star* for decision.

The only new questions presented here (and indeed the primary issues raised) do not involve Federal rights. In relying on the exemptions contained in § 423 of Article 27 and § 23 of Article 66A for non-profit educational exhibitions or distributions, plaintiffs raise not constitutional issues, but rather questions of fact. The Maryland Court of Appeals, in construing § 23 in Sanza v. Maryland State Board of Censors, 245 Md. 319, 226 A.2d 317 (1966),[20] said the following at page 341, 226 A.2d at page 329:

> "The appellants argue that the Section does not exempt all non-commercial exhibitions of films or views, and that therefore, all films and views not included in the exemption are covered. In our opinion, however, the exemption may well be taken to have been enacted so as to preclude the application of the Act to the showing of films or views for money if the money is collected by the designated non-profit organizations. So construed, the exemption is consistent with an interpretation of the Act which limits its application to films and views to be shown for an admission charge, except when shown by public associations or institutions which do not operate for profit."

█ Whether plaintiffs can fit within such exemption is a factual question which does not involve the vindication of a federally protected constitutional right. The issue is purely one arising under State law. If the corporate and club plaintiffs are what they claim to be, they are entitled to the exemptions provided by State law. If not, they are, under Star v. Preller, subject to prosecution in the same manner as are other commercial "peep show" operators who have refused to submit film to the Censor Board for licensing.

## IV

Finally, plaintiffs argue that these suits are not subject to dismissal because plaintiffs are here seeking money damages as well as injunctive relief. A careful reading of these two complaints discloses no specific claims for money damages from the named defendants. Plaintiffs have done no more than assert at page 21 of both complaints the right to amend at a later date and seek money damages against the defendants.

█ In any event, under Rule 12(b)(6), plaintiffs have not alleged facts which state a cause of action for money damages under 42 U.S.C. § 1983 against any of the four named defendants. A State's Attorney and a State Attorney General are immune from liability for damages allegedly flowing from acts committed in the performance of their duties. Scolnick v. Lefkowitz, 329 F.2d 716 (2d Cir. 1964), cert. den. 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964); Dixon v. State of Maryland, 261 F.Supp. 746 (D.Md.1966). Furthermore, no facts have been alleged in the complaint which would indicate that the Baltimore City Police Commissioner or the members of the State Board of Censors engaged in any acts which would subject them to individual damage claims under 42 U.S.C. § 1983. See Runnels v. Parker, 263 F.Supp. 271 (C.D.Cal.1967); Jordan v. Kelly, 223 F.Supp. 731 (W.D.Mo.1963).

---

20. *Sanza* and other more recent opinions of the Maryland appellate courts indicate that the State courts give full and careful consideration to constitutional and other attacks on Maryland's obscenity and censorship laws. See Lancaster v. State, 7 Md.App. 602, 256 A.2d 716 (1969); Village Books, Inc. v. State's Attorney for Prince George's County, 263 Md. 76, 282 A.2d 126 (1971).

184

**V**

For the reasons stated, defendants' motions to dismiss are granted, and plaintiffs' third motion for a temporary restraining order is denied. If plaintiffs wish to file amended complaints alleging causes of action for money damages under 42 U.S.C. § 1983 against additional defendants, plaintiffs should promptly file motions under Rule 21 requesting leave of Court to do so. If plaintiffs wish to appeal the aforegoing rulings, they should so advise the Court, and a final Order will be entered at once.