512 F.2d 1241
 The AGE OF MAJORITY EDUCATIONAL CORPORATION, and Glen Burnie
Adult Sex Education Club, by its President, David
Wilder, Appellants,
v.
David PRELLER et al., Appellees.
MODERN SOCIAL EDUCATION, INC., and Maryland Adult Sex
Education Club, by its President, Richard Kivert, Appellants.
v.
David PRELLER et al., Appellees.
 Nos. 73-1394, 73-1395.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 5, 1973.*
Resubmitted In Banc Oct. 10, 1974.
Decided March 4, 1975.
 
 Burton W. Sandler, Towson, Md., for appellants in No. 73-1394.
 William E. Seekford, Towson, Md., for appellants in No. 73-1395.
 Thomas G. Young, Asst. Atty. Gen. of Md. (Francis B. Burch, Atty. Gen., on brief), for appellees in Nos. 73-1394 and 73-1395.
 Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WINTER, CRAVEN, BUTZNER, RUSSELL, FIELD and WIDENER, Circuit Judges, In Banc.
 WINTER, Circuit Judge:
 
 
 1
 On the authority of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the district court dismissed the complaints of two allegedly nonprofit "sex education" clubs, which had instituted suit before they began operations seeking a declaratory decree that various provisions of Article 66A (the Maryland motion picture censorship statute) and Article 27 (the Maryland criminal code) of the Annotated Code of Maryland were unconstitutional, and an injunction to restrain defendants from issuing criminal process, including search warrants, from making arrests or seizures and from instituting prosecutions against plaintiffs by reason of their exhibition and sale of printed sexually-oriented materials and films depicting explicit sexual activity. The district court also declined to request that a statutory three-judge court be convened to adjudicate plaintiffs' claims that certain of the Maryland statutes were unconstitutional as applied to allegedly bona fide educational organizations. Additionally, the district judge denied plaintiffs' motion to disqualify him on the ground that he was personally biased and prejudiced against plaintiffs. Finally, the district court declined to permit one of the plaintiffs to file an amended complaint. All of these rulings are sought to be reviewed in these appeals.
 
 
 2
 We sustain all of the rulings of the district court, albeit one for reasons different from those assigned by it, except dismissal of the complaints insofar as plaintiffs seek declaratory judgments. The holding in Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), decided after the decision of the district court, requires the latter result. Accordingly, we affirm in part and reverse in part, and remand for further proceedings.
 
 I.
 
 3
 In a thorough and complete opinion, Modern Social Education, Inc. v. Preller, 353 F.Supp. 173 (D.Md.1973), the district court set forth the allegations of plaintiffs' complaints and the context in which the litigation was instituted, all, as the district court so aptly characterized, as "another battle in the long standing war between enforcement officials of the State of Maryland and those who seek to show or distribute sexually oriented films or printed materials in the City of Baltimore" and its southern environs. 353 F.Supp. at 174. The district court recounted how, immediately after a three-judge district court had upheld the validity of Maryland motion picture censorship law, including its application to the exhibition of motion pictures in coin-operated machines to individuals in private booths, plaintiffs were incorporated, purportedly as nonprofit educational corporations, and made plans to operate "sex education" clubs which admitted as members all applicants except law enforcement officers who would pay the membership fee. Members obtained the privilege of viewing films of explicit sexual activity upon payment of other charges and of purchasing sexually-oriented printed material. The clubs were located in singularly inappropriate locations for bona fide educational institutions, and, indeed, were in the same locations where other enterprises, unbashedly commercial and not educational, had been located until their operations were suspended as the result of the activities of law enforcement personnel in carrying out the prohibitions of Maryland's motion picture censorship and obscenity laws.
 
 
 4
 We need not recount the facts in this opinion. Reference to that of the district court suffices except to point out that while plaintiffs were not only assiduous in timing the institution of litigation in the district court so that filing of the suits preceded actual operations and the possibility that plaintiffs would be prosecuted in a state court, plaintiffs were also successful in controlling the sequence of events. When the complaints were filed, the fact is that no prosecutions against plaintiffs had begun in any Maryland court under any Maryland statute.
 
 II.
 
 5
 Younger v. Harris held that, when prosecution under a state statute has begun, the possible unconstitutionality of that statute does not justify an injunction against good attempts to enforce it absent a showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief. 401 U.S. at 54, 91 S.Ct. 746. The main prop of the holding was the strong federal policy "to permit state courts to try state cases free from interference by federal courts." 401 U.S. at 43, 91 S.Ct. at 750. This policy, in turn, is grounded upon the general equitable doctrine that equity should not interpose its decree where the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief, and upon the accepted concept of "comity," that is, "a proper respect for state functions, a recognition ... that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." 401 U.S. at 44, 91 S.Ct. at 750.
 
 
 6
 Of course in Younger, an indictment under California law had been returned against Harris before he sought to invoke federal equitable relief so that there was no occasion for Younger to decide if the special principle of nonexercise of federal jurisdiction which it restated had any application when a state prosecution was imminent, anticipated, or threatened, but not yet begun, when federal litigation was instituted. 401 U.S. at 41, 91 S.Ct. 746. We, however, had occasion to consider this question in Joseph v. Blair, 482 F.2d 575 (4 Cir. 1973), decided several months after the district court decided the instant cases. There, we held that the Younger special principle of nonexercise of federal jurisdiction "neither authorized nor required the non-exercise of federal jurisdiction" when it appears that "there is neither criminal nor civil litigation pending in a state court in which questions sought to be raised in federal litigation by the same parties or those in privity with them are present." 482 F.2d at 578. See also Lynch v. Snepp, 472 F.2d 769 (4 Cir. 1973). And this interpretation of Younger is confirmed by the analysis of its holding in Steffel v. Thompson, supra. Thus, we are constrained, consistent with our prior holdings, to disagree with the district court's conclusion in the instant cases that " Younger v. Harris bars the granting of federal injunctive relief in a case such as the present one in which criminal prosecution of the plaintiffs not only was expected and imminent at the time the federal action was filed but also was commenced within a short time thereafter." (Emphasis added.) 353 F.Supp. at 180.
 
 
 7
 It does not follow, however, that reversal of the decree dismissing the complaints insofar as they sought injunctive relief is required. Younger v. Harris clearly recognizes that, even aside from the special rule of nonexercise of federal jurisdiction when a plaintiff seeks to enjoin a pending state prosecution, the granting or withholding of equitable relief is to be determined by general principles of equity. Our decision in Joseph v. Blair also recognizes this principle. There, we affirmed the grant of interim equitable relief by Judge Merhige, where no state prosecution was pending, upon his finding that plaintiffs would suffer irreparable injury, if injunctive relief were denied; but in reversing Judge Kellam's dismissal of the complaint on the authority of Younger, even though no state prosecution was pending, we did not direct the granting of interim or permanent equitable relief. Rather, we directed further proceedings and indicated in note 6, 482 F.2d at 580, that other considerations might well justify the granting or withholding of an injunction. The principle is important because we are persuaded on the record before us that plaintiffs must be denied equitable relief at least on the familiar, equitable doctrine of unclean hands.**
 
 
 8
 As the opinion of the district court sets forth, the constitutionality of Maryland's obscenity laws and motion picture censorship law was fully established at the time that plaintiffs were incorporated, instituted suit, and began operations. 353 F.Supp. at 174-76. True it is that, in Star v. Preller, 413 U.S. 905, 93 S.Ct. 3054, 37 L.Ed.2d 1016 (1973), Star v. Preller, 352 F.Supp. 530 (D.Md.1972) (Star I), upholding the validity of the motion picture censorship law, was subsequently vacated and remanded for reconsideration in the light of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), et al.-only to be upheld again in Star v. Preller, 375 F.Supp. 1093 (D.Md.1974), aff'd 419 U.S. 956, 95 S.Ct. 217, 42 L.Ed.2d 173 (1974) (per curiam). But the fact is that at the times of incorporation, filing suit and beginning operations, decrees of a court of competent jurisdiction upholding the constitutional validity of both Maryland statutes were outstanding and unreversed. As the opinion of the district court also shows, in this state of the law, plaintiffs acted with great dispatch, if not unseemly haste, after Star I was decided; the places of operation of both plaintiffs are the same locations where there have been previous arrests and seizures of books, magazines and films on grounds of obscenity and noncompliance with the censorship statute; the places of operations of both plaintiffs are singularly inappropriate for bona fide educational institutions; and plaintiffs designedly brought suit before beginning operations in a deliberate strategy to avoid the possibility of any exercise of state jurisdiction. While we agree with the district court that the present record is not sufficiently complete that we can say with certainty that plaintiffs are not bona fide educational institutions, we do think that the cumulative effect of the factors we have identified is to establish that plaintiffs do not come into a court of equity with clean hands so that they are barred from injunctive relief even if their legal contentions are otherwise meritorious. As we construe Younger v. Harris, it permits a race to the courthouses, federal and state, between the private citizen who wants federal relief against enforcement of an allegedly invalid state statute, and state law enforcement officers who seek state process to enforce the laws that it is their responsibility to carry out. But, under traditional concepts of equity, our reading of Younger v. Harris is that it does not permit the race to be rigged by those who would seek equitable relief before beginning operations and about whom there are ineluctably strong suspicions of the bona fides of their proposed operations.
 
 III.
 
 9
 As we have indicated, Steffel v. Thompson requires us to reverse the order of the district court insofar as it dismissed plaintiffs' prayers for declaratory relief. Steffel not only confirmed our reading of Younger, that Younger, and its articulation of the special principles restricting the grant of equitable relief, were limited to cases where there was a pending state prosecution, it also held that when there was no pending state prosecution, neither the Younger special principles nor, with the exception of a limited number of special cases, the traditional prerequisites to equitable relief, as, for example, a demonstration of irreparable injury, were applicable to a request for declaratory relief. This is so, the Court said, because "a declaratory judgment will have a less intrusive effect on the administration of state criminal laws," 415 U.S. at 469, 94 S.Ct. at 1221, and "engrafting upon the Declaratory Judgment Act a requirement that all of the traditional equitable prerequisites to the issuance of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate." 415 U.S. at 471, 94 S.Ct. at 1222.
 
 
 10
 Thus, consistent with this holding, the doctrine of unclean hands would not bar plaintiffs from declaratory relief and the district court must adjudicate plaintiffs' prayers for declaratory judgment on their merits.
 
 IV.
 
 11
 What we have said with regard to plaintiffs' ineligibility for injunctive relief disposes of plaintiffs' contention that it was error for the district judge to decline to request that a statutory three-judge court be convened to pass on plaintiffs' claims of unconstitutionality of the Maryland statutes. In Maryland Citizens for a Representative General Assembly v. Governor of Maryland, 429 F.2d 606 (4 Cir. 1970), we decided that "(i)f it appears to the single district judge ... that the complaint does not state a substantial claim for injunctive relief, he need not request the convening of a three-judge court," and that "(i)nsubstantiality in the claim may appear ... because injunctive relief is otherwise unavailable" (footnotes eliminated), 429 F.2d at 611. Since we conclude that plaintiffs had unclean hands as a matter of law and therefore the district court was required to withhold equitable relief, it follows that the district judge could act alone and was not required to request that a three-judge court be convened. Of course, he need not request a three-judge court in order to adjudicate plaintiffs' prayers for declaratory relief. Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970).
 
 V.
 
 12
 Two points remain for decision: plaintiffs' claim that the district judge should have disqualified himself on plaintiffs' affidavits of prejudice and bias, and the claim of plaintiff Modern Social Education, Inc. (Modern) that the district judge was in error in declining to allow the filing of an amended complaint tendered by that plaintiff. The contentions require only brief comment.
 
 
 13
 The question of whether the district judge incorrectly declined to disqualify himself was reviewed by us on application for a writ of mandamus, and the writ was denied. Modern Social Education, Inc. v. Harvey, No. 73-1028 (unreported), January 15, 1973. The denial was on the merits and we will not consider the question anew.
 
 
 14
 Plaintiff Modern's amended complaint, purportedly filed after defendants had filed a responsive pleading to the original complaint, dropped one party plaintiff, added two new parties plaintiff, and added six police officers and two state judges as parties defendant. Because parties were both dropped and added, Rule 21, F.R.Civ.P., required that leave of court be sought and obtained as a prerequisite to filing the amended complaint. Modern did not seek such leave and, indeed, was adamant that it would not seek such leave. Under such circumstances, the district court was plainly correct in declining to receive the amended complaint.
 
 
 15
 Affirmed in part; reversed in part. Costs to be divided equally between the parties.
 
 WIDENER, Circuit Judge (concurring):
 
 16
 I concur in the result reached by the majority except I would, on remand, just prior to entry of the final order, require the vacation of the entire judgment and at the conclusion of the case the entry of a fresh order. Mitchell v. Donovan, 398 U.S. 427, 432, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970).
 
 
 17
 As to part II of the opinion of the court, I think the majority goes unnecessarily out of its way, in a mechanical application of the race to the courthouse test, to reject the reasoning and a perfectly sound finding of the district court made in its excellent opinion. I do not disagree that unclean hands may be a cause to reject injunctive relief.
 
 
 18
 It should be understood that the State criminal proceedings referred to throughout were "presently under way" at the time the district court entered its order. 353 F.Supp. 173, 179. That being true, the district court considered the principles of Younger were applicable. Its view receives support in the case of Allee v. Medrano, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974), a case apparently not considered by the majority.
 
 
 19
 Allee was an appeal from a three-judge district court which had enjoined the enforcement of five Texas statutes, three of which had been repealed prior to the time the Supreme Court heard the case. While sustaining an injunction issued under the ancillary jurisdiction of the three-judge court as to other aspects of the case, the part of the opinion which ought to concern us first has to do with the directions to the district court on remand. In remanding the case for the district court to make more precise findings in order to determine whether or not the principles of Younger should apply, the court stated:
 
 
 20
 "Although both parties here have assumed the relevance of Younger, we have been unable to find any precise indication in the District Court opinion or in the record that there were pending prosecutions at the time of the District Court decision." 416 U.S. 802, 817, 94 S.Ct. 2191, 2201. (Italics added)
 
 
 21
 Explaining that the union organizing effort, which was the source from which the controversy arose, took place five years before, the court then explained that it seemed "... likely that any state prosecutions initiated during the effort would have been concluded by that time (the filing of the district court's opinion) unless they had been restrained by a temporary order of the federal court ...," and went on there was "... no indication that such an order was ever issued." 416 U.S. 802, 817, 94 S.Ct. 2191, 2201. I submit no such explanation was necessary in the opinion if the court were not ruling that Younger applied if the State prosecutions had been commenced prior to the entry of the district court's order instead of prior to the institution of the suit.
 
 
 22
 As to the Texas statute not repealed, on remand, the Court directed the district court:
 
 
 23
 "If there are pending prosecutions then the District Court should determine whether they were brought in bad faith, for the purpose of harassing appellees and deterring the exercise of First Amendment rights, so that allowing the prosecutions to proceed will result in irreparable injury to the appellees. If there are no pending prosecutions and only declaratory relief is sought, then Steffel clearly controls and no Younger showing need be made." 416 U.S. 802, 820, 94 S.Ct. 2191, 2203.
 
 
 24
 The wording of this direction to the district court would be quite misleading unless the time referred to was not earlier than the entry of the order by the district court, not the institution of the suit. For the court directs the application of Dombrowski[1]-Younger principles are pending, not have been pending since before the institution of the federal proceeding.
 
 
 25
 Thus, a literal reading of the language of the Court from its most recent opinion on the subject indicates that it takes the same view of the matter as did the district judge in this case, and, while it may give weight to the race to the courthouse, declines a mechanical application of the test, as is made by the majority here, which would exclude in all instances adherence to the Younger standards in each case in which the federal proceeding is instituted first, although the State proceeding may have been instituted prior to the entry of the order of the district court.
 
 
 26
 But if it be argued that the language I have quoted from Allee is taken from a direction of the Court to the district court on remand, and, instead of being read literally, creates another nice distinction in the maze of Dombrowski-Younger cases[2] which have come in the years following Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that Younger principles may apply to a case on remand but not when heard in the district court, and this is the necessary holding of the majority here if its opinion is to be made consistent with Allee, then my difference with its reasoning goes further.
 
 The district court decided:
 
 27
 "Accordingly, plaintiffs are not entitled to injunctive relief in this Court because they have not suffered nor have they been threatened with any irreparable damage, much less any that is both 'great and immediate'." 353 F.Supp. 173, 182.
 
 
 28
 The opinion of the majority neither takes into account nor refers to the quoted finding of the district court which should be applicable in any case in which injunctive relief is sought, even though the requirement of irreparable injury is a Younger requirement. The Supreme Court has made this clear in Allee. In discussing whether or not the injunction issued was an appropriate exercise of the court's equitable powers, and in deciding that the part of the decree under consideration created no interference with prosecutions pending in the State courts so that Younger did not apply, the court stated:
 
 
 29
 "Nonetheless there remains the necessity of showing irreparable injury, 'the traditional prerequisite to obtaining an injunction' in any case. Younger, supra, 401 U.S., at 46, 91 S.Ct. (746), at 751." (Italics added)
 
 
 30
 My point is that we ought not to so firmly fix the position of this court by a mechanical application of the race to the courthouse test that we automatically reject all of the Younger principles in each case merely because the federal proceeding was filed before the institution of the State proceedings. We do not have before us a case seeking an injunction in which no State proceedings were filed. That question was reserved in Steffel, see esp. 415 U.S. p. 463, 94 S.Ct. 1209, and the reservation was emphasized in Allee, 416 U.S. n. 15, p. 820, 94 S.Ct. 2191.
 
 
 31
 Since I understand the inference from Steffel to be that declaratory judgment proceedings need not interfere with a pending State criminal prosecution, although that question was not before the court, I see no harm, on the facts of this case, in allowing the declaratory judgment proceeding to continue along its course in the federal court and at the same time, by not issuing an injunction, allowing the criminal proceeding to continue on its way in the State courts. Such, of course, is the necessary result arrived at here. I note the affirmative rule set out in Allee as to when Steffel "clearly controls," 416 U.S. p. 820, 94 S.Ct. 2191, is not accompanied by a corresponding negative, unless one may be inferred.
 
 
 
 *
 Argument was before a panel consisting of BOREMAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges
 
 
 **
 It may be argued, based upon Stefaneli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Douglas v. Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); and Spielman Motor Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1934), that notions of comity mitigate against the right to injunctive relief to prevent a threatened criminal prosecution even though the prosecution has not begun when the action for federal injunctive relief is instituted. It is unnecessary to consider the validity of this argument, because we think that the doctrine of unclean hands is a complete bar to plaintiffs' obtaining equitable relief
 
 
 [1]
 Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)
 
 
 [2]
 For a good discussion of the Dombrowski-Younger line of cases, see Field, Abstention in Constitutional Cases: The Scope of the Pullman Abstention Doctrine, 122 U.Pa.L.Rev. 1071 (1974), esp. p. 1163, et seq. Since the precise subject under consideration in Allee was the application of Younger, I find no reason to believe the Court did not mean what it said